# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-WC-00046-COA

**BENJAMIN RAY SMITH**                                                                 **APPELLANT**

**v.**

**DENNIS WRIGHT & SON PLUMBING AND**                                    **APPELLEES**
**STATE FARM FIRE & CASUALTY COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2024 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | OLUFEMI GBOLAHAN SALU |
| ATTORNEYS FOR APPELLEES: | ROBERT R. STEPHENSON JR. |
| | MICHAEL MADISON TAYLOR JR. |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 03/31/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND WEDDLE, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Benjamin Smith appeals from a final order of the Mississippi Workers' Compensation Commission (Commission).  On appeal, Smith asserts that the Commission made an erroneous finding of fact regarding Smith's complaints of a left shoulder injury.  Smith also argues that the Commission failed to evaluate whether Smith's employer and the employer's insurance carrier were equitably estopped from denying Smith's claim for his left shoulder injury.  After our review, we find that the Commission's decision was supported by substantial evidence, and we affirm.

## FACTS

¶2.     Smith was employed by Dennis Wright & Son Plumbing (Wright Plumbing) as a

foreman. On February 20, 2020, Smith suffered a work-related injury after the trencher he was operating struck a root and threw Smith to the ground.

¶3.     Relevant to this appeal, the first medical treatment Smith sought for his injury was from Dr. Mary Martin, a chiropractor. Smith presented to Dr. Martin on March 1, 2020, and filled out an intake form. On his intake form, Smith listed "back and neck problems" as the reason for his visit. Smith had approximately five more appointments with Dr. Martin. Smith eventually sought treatment from other medical and chiropractic providers, and he underwent two Employer Medical Examinations (EME) and two Independent Medical Examinations (IME), which we will discuss in detail below.

¶4.     On July 22, 2020, Smith filed a petition to controvert with the Commission alleging that on February 20, 2020, he suffered work-related injuries to his cervical spine, thoracic spine, lumbar spine, and body as a whole. Wright Plumbing and its insurance carrier, State Farm Fire and Casualty Company (collectively, Employer/Carrier), initially denied compensability. However, the Employer/Carrier later admitted that Smith sustained a compensable, work-related injury on February 20, 2020. On April 28, 2022, Smith filed an amended petition to controvert and added a left shoulder injury to his list of injuries.

¶5.     An administrative judge (AJ) held a hearing on Smith's claim. The parties stipulated to the following: (1) Smith suffered an admitted injury to his neck and back on February 20, 2020, when a ditch witch trencher struck a root and threw Smith to the ground; (2) Smith's average weekly wage is $962.06; and (3) Smith was paid temporary total disability from August 11, 2022, through June 30, 2023, at $505.43 per week. The only contested issues

2

were (1) whether Smith suffered a work-related injury to his left shoulder on February 20, 2020, and whether Smith suffered a psychological overlay as a result of his work injury; (2) the nature and extent of temporary disability, if any; (3) the extent of permanent disability and resulting loss of wage-earning capacity and/or industrial loss of use, if any; and (4) whether the Employer/Carrier are responsible for the treatment Smith received from Mid South Chiropractic.

¶6.    The following medical exhibits were admitted into evidence at the hearing: Smith's medical records from Dr. Mary Martin, Dr. Michael Winkelmann, Mid South Chiropractic, Ortho South, the MRI report and MRI arthrogram report of Smith's left shoulder, the EME reports from Dr. Phillip Blount and Dr. Rahul Vohra, and the IME reports from Dr. Justin Hall and Dr. Angela Koestler.  The AJ also heard testimony from Smith; Smith's wife, Michelle; Smith's mother-in-law, Sandra Kish; Dennis Wright, the owner of Wright Plumbing; Jeff Wright, a manager at Wright Plumbing; and Phillip Tolbert Jr., Smith's co-worker who was on the scene at the time of Smith's injury.

¶7.    On July 12, 2024, the AJ entered an order finding that Smith sustained a compensable, work-related injury to his neck and back on February 20, 2020, and that he was entitled to temporary total disability benefits at a rate of $505.43 per week from September 23, 2021, through November 11, 2022.  However, the AJ found that Smith did not suffer a work-related injury to his left shoulder.  The AJ further found that Smith failed to show he suffered any permanent disability and that the Employer/Carrier were not responsible for medical treatment provided by Mid South Chiropractic.

¶8.    Smith filed a petition for review by the full Commission.  On December 18, 2024, the Commission entered an order affirming the findings and opinion of the AJ.  This appeal followed.

**STANDARD OF REVIEW**

¶9.    "This Court employs a limited standard when reviewing a workers' compensation appeal."  *Mueller Indus. Inc. v. Waits*, 283 So. 3d 1137, 1141 (¶10) (Miss. Ct. App. 2019). When reviewing a Commission's decision, we must affirm where the decision is supported by substantial evidence.  *Id*.  We will reverse "only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence."  *Id*.

¶10.   The Commission is the ultimate fact-finder; therefore, in cases like the one before us, where "the Commission adopts the AJ's findings and conclusions, we review the AJ's findings and conclusions as those of the Commission."  *Id*. at (¶11).

**DISCUSSION**

**I.    Left Shoulder Injury**

¶11.   Smith's central issue on appeal is whether the Commission erred in finding that Smith failed to record any injury to his left shoulder on his March 1, 2020 intake form at Dr. Martin's office.  Smith argues that the Commission relied on this erroneous finding in determining that Smith did not suffer a compensable, work-related injury to his left shoulder.

¶12.   The Commission is the ultimate fact-finder in a workers' compensation case.  *Whittle v. Tango Transp.*, 168 So. 3d 1157, 1160 (¶17) (Miss. Ct. App. 2014).  As the fact-finder, the Commission has a duty "to evaluate and determine the weight of the evidence."  *Id*.  "Where

4

there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence is more credible." *Id*. "Because the Commission is the ultimate fact-finder and judge of the credibility of the witnesses, this Court may not reweigh the evidence before the Commission." *Curry v. Ashley Furniture Indus.*, 296 So. 3d 193, 197 (¶13) (Miss. Ct. App. 2020). As stated, when the Commission's decision is supported by substantial evidence, we must affirm. *Waits*, 283 So. 3d at 1141 (¶10).

¶13. Smith, as the claimant, bears the burden of proving that he is entitled to workers' compensation benefits. *City of Jackson v. Sandifer*, 125 So. 3d 681, 688 (¶27) (Miss. Ct. App. 2013). Specifically, Smith must prove the following elements by a preponderance of the evidence: "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability." *Id*. This Court has held that "[u]nless common knowledge is sufficient, medical evidence must prove the existence of the disability and its causal connection to the employment." *Id*. "The evidence used to prove the causation must be credible medical evidence and not mere speculation." *Id*.

¶14. In his appellate brief, Smith acknowledges that all the medical opinions admitted into evidence at the hearing "referenced and repeated" that Smith did not record a left shoulder injury on his intake form. Smith therefore does not cite any medical opinions in support of his argument on appeal; instead, Smith relies on his wife's and Tolbert's testimony that Smith suffered an injury to his left shoulder on February 20, 2020.

¶15. The Commission ultimately found that Smith did not meet his burden of proving that

5

he sustained a compensable work-related injury to his left shoulder. In finding that Smith did not sustain a compensable injury to his left shoulder on February 20, 2020, the Commission relied on Smith's March 1, 2020 intake form, as well as the medical records and opinions admitted into evidence.

¶16. Smith's March 1, 2020 intake form from Martin Chiropractic reflects that Smith wrote "back and neck problems" as the reason for his visit. In response to the question asking when his symptoms appeared, Smith answered, "years ago." The intake form also contains a pain diagram, which includes a picture and an outline of a body, and directs the patient to "mark an X on the picture where you continue to have pain, numbness, or tingling." Smith asserts that he "clearly" placed an "X" on the left shoulder portion of the diagram to indicate left shoulder pain.

¶17. Over the next three years, four different medical providers reviewed Smith's intake form and chiropractic notes and determined that Smith did not complain of left shoulder pain at his March 1, 2020 appointment with Dr. Martin. Moreover, these providers also opined that Smith did not suffer a left shoulder injury on February 20, 2020.

¶18. The first provider to make such finding was Dr. Philip Blount, a physiatrist, who conducted an EME on Smith on December 12, 2021. Dr. Blount's EME report reflects that he reviewed Smith's medical records, including the chiropractic records from Martin Chiropractic, and he examined Smith. Regarding whether Smith suffered a left shoulder injury on February 20, 2020, Dr. Blount stated:

> It is clear in the chiropractic notes from March of 2020 that the chief complaints according to pain diagram, intake form filled out by Mr. Smith, as

6

well as chiropractic clinic notes and written communications that issues were that of right-sided neck pain, right headache, right upper back, and low back pain. There is no mention here of difficulty with the left shoulder.

Dr. Blount concluded that he was not able to say with a reasonable degree of medical probability that Smith's left shoulder complaints were due to his February 20, 2020 work-related injury.

¶19. On June 16, 2023, Dr. Rahul Vohra, a physiatrist, conducted another EME on Smith. Dr. Vohra's EME report reflects that he reviewed Smith's medical records, including his intake sheet from Martin Chiropractic, and he examined Smith. In his report, Dr. Vohra opined that Smith's complaints of pain "are not related to an on-the-job injury" on February 20, 2020. Dr. Vohra further opined that "no portions" of Smith's body were injured on February 20, 2020.

¶20. Regarding Smith's alleged left shoulder injury, Dr. Vohra stated, "It is my opinion that his left shoulder complaints are not related [to his February 20, 2020 injury] as there was no mention of left shoulder pain when he was initially treated by his chiropractor." Dr. Vohra found that Smith first complained of left shoulder pain on September 23, 2021—more than a year and a half after his work injury—when he presented to physiatrist Dr. Winkelmann for treatment. At that appointment, Dr. Winkelmann noted that Smith complained of pain in his neck, shoulder, and left lower extremity, and he ordered imaging of Smith's left shoulder to evaluate Smith's complaints. Dr. Winkelmann reviewed the MRI results on June 21, 2022, and found that the MRI "showed no evidence of an anterior-inferior labral tear as previously suspected" but rather "suggests more likely degenerative changes rather than labral tear."

¶21. On November 27, 2023, Dr. Justin Hall, an orthopedic surgeon, conducted an IME on Smith. In addition to examining Smith, Dr. Hall reviewed Smith's medical records, including Dr. Martin's notes from her first post-injury appointment with Smith. In his report, Dr. Hall observed that Dr. Martin noted that Smith did not complain of any shoulder pain at that appointment. Dr. Hall stated that he found "no anatomic evidence to support the fact" that Smith's left shoulder pain resulted from his work injury. Dr. Hall ultimately opined that Smith's neck pain and left shoulder pain "are less likely not caused by his work injury and more so by degenerative changes and accumulation of injuries throughout his life."

¶22. On December 6, 2023, Smith presented to Dr. Angela Koestler, a psychologist, for an IME. Dr. Koestler noted that Smith's March 1, 2020 evaluation by Dr. Martin reflects that Smith presented "with right neck pain, right headache, right upper back pain, and left low back pain." Dr. Koestler found that Smith did not report any shoulder pain at this appointment.

¶23. After reviewing the evidence and testimony, the AJ found Smith did not suffer a work-related injury to his left shoulder. The AJ explained that "[i]t is clear that not only do the medical records not support a finding of any injury to the left shoulder from the February 20, 2020 incident but actually are overwhelming in showing that any left shoulder pain is not related to the February 20, 2020 incident." The Commission then affirmed the AJ's findings and decision.

¶24. After reviewing the record, we find that the Commission's decision that Smith did not suffer a compensable, work-related injury to his left shoulder is supported by substantial

8

evidence. Smith failed to provide any medical evidence in support of his claim of a left shoulder injury; therefore, he failed to meet his burden of showing that he is entitled to workers' compensation benefits.

¶25. Because we affirm the Commission's decision as to this issue, we decline to address Smith's related claims as to whether he suffered any psychological overlay or is entitled to disability benefits and loss of wage-earning capacity as a result of his left shoulder injury.

## II. Equitable Estoppel

¶26. Smith next argues that the Employer/Carrier are equitably estopped from denying his left-shoulder injury claim due to misconduct, delays, intimidation, and fraud by Wright Plumbing.

¶27. Smith raises this argument for the first time on appeal. Although Smith made allegations of employer misconduct, retaliation, fraud, and denial of benefits by Wright Plumbing in the proceedings below, Smith never argued that the Employer/Carrier should be equitably estopped from denying his left shoulder claim due to these allegations. Because this Court "need not consider matters raised for the first time on appeal," we find that "consideration of this issue on appeal is procedurally barred." *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 864 (¶26) (Miss. 2007).

¶28. Furthermore, Smith failed to cite any legal authority in support of his argument. "Our caselaw clearly provides that the failure to cite supporting legal authority precludes consideration of an issue on appeal." *Green v. Green*, 349 So. 3d 1187, 1200 (¶47) (Miss. Ct. App. 2022); *accord* M.R.A.P. 28(a)(7).

¶29. Based on the foregoing, we find that Smith has waived consideration of this issue on appeal.[1]

### III. Modifying the Record on Appeal

¶30. At the hearing before the AJ, Smith submitted a flash drive containing audio recordings of conversations among Smith, Dennis Wright, and other co-workers into evidence. After Smith filed his notice of appeal, Smith's appellate counsel had the audio recordings transcribed and filed in this Court. In his appellant's brief, Smith seeks admission of the transcript of these audio recordings as part of the record excerpts pursuant to Mississippi Rule of Appellate Procedure 10(c).[2] Smith acknowledges that this transcript was not part of the record below; however, he submits that reading the transcript will be less cumbersome for this Court than listening to the audio on the flash drive.

¶31. Because the flash drive containing the audio recordings is included in the record on appeal, we find it unnecessary and duplicative to modify the record to include a transcript of the recordings. Smith's request to admit the transcript as part of the record on appeal is

---

[1] The record reflects that although Smith was represented by several different attorneys at various stages in the proceedings below, he ultimately proceeded pro se at the hearing before the AJ. *See Green*, 349 So. 3d at 1200 (¶47) (recognizing that "while pro se litigants are afforded some leniency," they are still "held to the same procedural and evidentiary requirements as individuals represented by counsel"). However, Smith is represented by counsel on appeal.

[2] Rule 10(c) provides the appropriate procedure for modifying the record on appeal when "no stenographic report or transcript of all or part of the evidence or proceedings is available." M.R.A.P. 10(c). In that instance, an appellant may prepare a statement of the evidence or proceedings from recollection. *Id.* Rule 10(c) requires that the appellant file this statement "with the clerk of the trial court within 60 days after filing the notice of appeal." *Id.* Our review of the record reflects that Smith failed to follow the procedure outlined in Rule 10(c).

denied.

## CONCLUSION

¶32. We find that the Commission's decision that Smith did not suffer a compensable, work-related injury to his left shoulder is supported by substantial evidence. We therefore affirm the Commission's order.

¶33. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**